**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**KIMBERLEY HENRY,**

     **Petitioner,**

**v.**                                                    **Criminal No.: 1:08cr83-2**
                                                         **Civil No.: 1:13cv218**
**UNITED STATES OF AMERICA,**                            **(Judge Keeley)**

     **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On September 23, 2013, the petitioner, a former inmate,[1] along with her co-defendant husband Edgar Henry, also a former inmate, (collectively, "the Henrys") attempted to file a "joint 2255 appeal," i.e., a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody,[2] along with a Motion for Recusal,[3] seeking to have the district judge who presided over their criminal prosecutions recused.[4] The Clerk of Court docketed the §2255 and the recusal motions in both petitioner's and her husband's cases, and sent each a Notice of Deficiency, advising them to file their cases on court-approved forms.[5] On October 21, 2013, having received no response from petitioner to her deficiency notice, an Order

---

[1] Petitioner was released from prison on November 8, 2012, to begin her 4-year term of supervised release. See Dkt.# 218 at 4.

[2] Dkt.# 221.

[3] Dkt.# 222.

[4] As of the date of this Report and Recommendation, the recusal motions have not yet been ruled upon.

[5] Edgar Henry's §2255 motion was assigned to Magistrate Judge Kaull. On November 4, 2013, Edgar Henry filed what was in effect a motion to recuse Magistrate Judge Kaull from his case. See 1:08cr83-1, Dkt.# 237. As of the date of this Report and Recommendation, that motion, as well, has not yet been ruled upon.

to Show Cause was entered.[6] On October 23, 2013, petitioner filed her court-approved form petition without a memorandum in support.[7]  On November 4, 2013, petitioner filed a response to the Show Cause Order.[8]

On October 28, 2013, the undersigned made a preliminary review of the petition and found that summary dismissal was not warranted. Accordingly, the respondent was directed to file an answer.  On November 25, 2013, the respondent filed its answer.[9] Petitioner replied on December 23, 2013.[10]

This matter, which is pending before me for report and recommendation ("R&R") pursuant to LR PL P 2, is ripe for review.

## II. <u>Facts</u>

### A. <u>First Conviction and Sentence</u>

The convictions in this case arose out of an indoor marijuana farming operation that the Henrys conducted at their home on a 77-acre tract of land in Rosedale, Gilmer County, West Virginia.

On July 13, 2004, in Criminal Case No. 1:04cr82,[11] Magistrate Judge Kaull issued a search warrant for thermal imaging of the Henrys' Gilmer County, West Virginia residence,

---

[6] Dkt.# 230.

[7] Dkt.# 232.

[8] Dkt.# 238.

[9] Dkt.# 239.

[10] Dkt.# 241.

[11] There is apparently a typographical error in the spelling of petitioner's first name in the earlier criminal case; the docket there shows her first name without the second "e," i.e.: "Kimberly Henry," instead of Kimberley Henry, as it is on the instant docket, and as it is signed on her §2255 motion.

based upon the sworn affidavit of West Virginia State Police Trooper James M. Manning ("Manning").[12]

On July 16, 2004, after returning the executed warrant from the thermal imaging search, Manning applied for a conventional search warrant for the Henrys' residence.[13] Magistrate Judge Kaull issued the warrant the same day.[14] The affidavit supporting the conventional search warrant mirrored the initial search warrant affidavit, with additional information gleaned from the thermal imaging of the Henrys' residence.

Trooper Manning returned the timely executed conventional search warrant on July 21, 2004.[15]

On November 3, 2004, the Grand Jury returned a three-count indictment[16] with a forfeiture allegation against the Henrys, charging each of them in Count One with Conspiracy to Manufacture, Distribute and Possess With Intent to Distribute 100 or More Marijuana Plants, in violation of 21 U.S.C. §§841(a)(1), 846, and 841(b)(1)(B); Count Two: Aiding and Abetting in Manufacturing Marijuana, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B), and 18 U.S.C. §2; and in Count Three with Aiding and Abetting in Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(D) and 18 U.S.C. §2. Additionally, the Grand Jury charged that in committing the offenses in Counts One – Three, the

---

[12] See 1:04cr82, Dkt.# 16-2.

[13] See Docket Sheet for United States v. Henry, 1:04MJ27 and 1:04cr82, Dkt.#s 4 and 5.

[14] See Application and Affidavit for Search Warrant, 1:04cr82, Dkt.# 5. Although the warrant was issued on July 16, 2004, the documents were not docketed until July 19, 2004.
[15] See 1:04cr82, Dkt.#s 8 and 9.

[16] In that indictment, petitioner's name is spelled "Kimberley," the way she spells it in this action. See 1:04cr82, Dkt.# 1. However, every other place elsewhere in that docket, and in the 4th Circuit's record on appeal of that case, her name is misspelled "Kimberly."

Henrys committed an offense and had relevant conduct involving at least 10 kilograms but less than 20 kilograms of marijuana, as described in U.S.S.G. §§2D1.1(a)(3) and 2D1.1(c)(12).

On November 19, 2004, the Henrys retained counsel, Attorney F. John Oshoway, who entered a notice of appearance on their behalf.

On December 10, 2004, the Henrys filed a Motion to Suppress all evidence seized incident to the execution of the search warrant.[17]

On December 15, 2004, the United States responded to the Henrys' suppression motion, and also filed its own motion to require the defendants to show entitlement to a Franks[18] hearing.[19]

At a motions hearing on December 17, 2004, Magistrate Judge Kaull orally ordering the Henrys to respond to the government's motion that they show entitlement to a Franks hearing, and continued proceedings on the suppression motion until January 3, 2005.[20] On December 21, 2004, Magistrate Judge Kaull entered written orders formalizing his oral pronouncements.[21]

On December 28, 2004, the Henrys filed their motions with memoranda/offers of proof in support of a Franks hearing.[22] On December 29, 2004, the Government filed its response in

---

[17] See 1:04cr82, Dkt.#s 13-14.

[18] Franks v. Delaware, 438 U.S. 154 (1978).

[19] See 1:04cr82, Dkt.# 15.

[20] See 1:04cr82, Dkt.#s 16, 17 and 171.

[21] See 1:04cr82, Dkt.# 17.

[22] See 1:04cr82, Dkt.#s 24 and 25.

opposition.[23] The Government then filed a January 31, 2005 Notice of Supplemental Authority and a March 2, 2005 Second Notice of Supplemental Authority.[24]

Magistrate Judge Kaull conducted a second motions hearing on March 9, 2005 to address the Henrys' suppression motion and the Government's motion that the Henrys demonstrate their entitlement to a <u>Franks</u> hearing.[25] During this hearing, the parties' motions were fully litigated, and Manning's testimony was taken. Through counsel, the Henrys subjected Manning to vigorous cross examination.

On March 29, 2005, Magistrate Judge Kaull issued his R&R regarding the pending motions.[26] On April 6, 2005, the Government filed a response indicating that it had no objection to Magistrate Judge Kaull's rulings.[27] On April 18, 2005, United States District Judge Irene M. Keeley entered an Order adopting the R&R in its entirety, denying the Henrys' suppression motions and granting the Government's motion requiring them to show their entitlement to a <u>Franks</u> hearing.[28] When the Henrys sought leave to file untimely objections to the R&R, the United States did not object and the Court granted the leave.[29] The Henrys then filed Joint

---

[23] <u>See</u> 1:04cr82, Dkt.# 29.

[24] <u>See</u> 1:04cr82, Dkt.#s 33 and 35.

[25] <u>See</u> 1:04cr82, Dkt.# 172.

[26] <u>See</u> 1:04cr82, Dkt.# 37.

[27] <u>See</u> 1:04cr82, Dkt.# 39.

[28] <u>See</u> 1:04cr82, Dkt.# 40.

[29] <u>See</u> 1:04cr82, Dkt.#s 41 – 43.

Objections to the R&R on May 16, 2005.[30]  By Order entered May 18, 2005, the District Court overruled the Henrys' objections, again affirming the R&R.[31]

On May 19, 2005, an Order was entered, resetting trial from a date set in earlier amended scheduling Order to June 7, 2005.  A pretrial conference was held on May 27, 2005.  On June 7, 2005, the Henrys moved to continue their trial.  By Order entered the same day, the motion to continue was granted.

On March 24, 2006, a status conference was held.  On March 31, 2006, a new scheduling Order was entered, setting trial for July 5, 2006.

On June 30, 2006, the Henrys filed a Motion to Dismiss for Violation of Speedy Trial Rights.  The government responded. On July 5, 2006, before the Court had an opportunity to rule on the motion, the Henrys each signed plea agreements, agreeing to enter conditional guilty pleas to Count One, but reserving their right to appeal the denial of their motions to suppress evidence seized pursuant to a search warrant; the denial of their motions to dismiss for speedy trial violation; and the issue of whether 100 or more marijuana plants was attributable to them as relevant conduct.[32]  The Henrys entered their pleas at a Rule 11 hearing held the same day; the Motion to Dismiss and other motions were argued at that hearing as well.[33]

On July 28, 2006, the Henrys' retained counsel F. John Oshoway moved to withdraw;[34] by Order entered August 1, 2006, his motion was granted.  On August 29, 2006, Attorney Brian

---

[30] See 1:04cr82, Dkt.# 44.

[31] See 1:04cr82, Dkt.# 45.

[32] See 1:04cr82-1, Dkt.# 82, and 1:04cr82-2, Dkt.# 83.

[33] See 1:04cr82, Dkt.#s 80, 81, and 137.

[34] *Inter alia,* as one reason for his withdrawal, counsel indicated that subsequent to the entry of their pleas, both Henrys indicated their wish to withdraw the pleas, communicated that fact to him, and then shortly thereafter, faxed him a letter detailing their dissatisfaction with him, terminating the attorney-client relationship. See 1:04cr82, Dkt.# 107.

Kornbrath was appointed to represent the petitioner.[35]   Sentencing began on December 8, 2006; was continued to December 12, 2006; and completed on April 23, 2007.   Attorney Kornbrath filed a Motion for Reconsideration of Speedy Trial Calculations and the earlier Motion to Dismiss for Violation of Speedy Trial Rights, which were taken up at the first sentencing hearing.   At the final April 23, 2007 sentencing hearing,[36]   the Henrys were each sentenced to a term of 60 months imprisonment on each count,[37] to run concurrently, and 4 years of supervised release on each count, to run concurrently.[38]

**B.  First Appeal**

The Henrys, petitioner through Attorney Korbrath and her husband *pro se*,[39] filed timely notices of appeal.   On appeal, their cases were consolidated, and they raised three grounds: 1) whether the district court erred in denying their motions to dismiss the indictment for a Speedy Trial Act violation; 2) whether the thermal-imaging search warrant that led to the seizure of marijuana on their property was valid; and whether the determination of their relevant conduct for purposes of sentencing was accurately calculated.   The case was argued on May 16, 2008.

On August 19, 2008, the Fourth Circuit reversed, vacated and remanded by published opinion based solely on the Speedy Trial Act issue. In its opinion, the Fourth Circuit agreed with the Henrys that the 103-day continuance ordered by the district court did not comply with the

---

[35] Edgar Henry continued on *pro se.*

[36] See 1:04cr82-1, Dkt.# 174-3 at 40.

[37] Five years is the mandatory minimum for each of the offenses. See 1:04cr82, Dkt.# 157 at 1.

[38] See 1:04cr82-2, Dkt.# 153.

[39] Attorney Charlie Berry was later appointed to represent Edgar Henry on appeal. See 1:04cr82 at 169.

strict requirements for granting an ends-of-justice continuance as set forth in Zedner.[40] Specifically, it found that the delay exceeded the Speedy Trial Act's seventy-day limit.[41] Accordingly, it held that the indictment must be dismissed, but left the decision as to whether the indictment's dismissal should be with or without prejudice for the district court to decide on remand.[42]

On remand, by Order entered September 9, 2008, the district court dismissed the indictment without prejudice. After the Court ruled, the government re-presented the case to a federal Grand Jury on October 7, 2008. The indictment returned in the instant case mirrors the indictment returned in Case Number 1:04cr82.

**C. Second Conviction and Sentence**

On October 2, 2008, in the instant case,[43] the Grand Jury returned a three-count indictment with forfeiture allegations against the Henrys, charging each of them in Count One with Conspiracy to Manufacture, Distribute and Possess With Intent to Distribute 100 or More Marijuana Plants, in violation of 21 U.S.C. §§841(a)(1), 846, and 841(b)(1)(B); Count Two: Aiding and Abetting in Manufacturing Marijuana, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B), and 18 U.S.C. §2; and in Count Three with Aiding and Abetting in Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(D) and 18 U.S.C. §2.[44]

---

[40] Zedner v. United States, 547 U.S. 489 (2006).

[41] The Fourth Circuit's opinion did not address the other two grounds raised by petitioners.

[42] (4th Cir. Dkt.# 47)(07-4587)(07-4578).

[43] Hereafter, unless otherwise specified, the references to the docket refer to docket entries in the instant case.

[44] Dkt.# 1.

On November 16, 2008, petitioner filed a Motion for Recusal of Magistrate Judge;[45] a Motion to Suppress Evidence;[46] and a Motion to Suppress Evidence Based on <u>Franks v. Delaware</u>.[47] The following day, Edgar Henry filed a Motion for Joinder, to join in the pre-trial motions.[48] On December 1, 2008, the government responded to the motions.[49] On December 3, 2008, the parties argued their respective positions at a motion hearing in front of Magistrate Judge Kaull.[50] By Order entered the same day, the recusal motion was denied and the hearing on the suppression motions was continued.[51] On December 22, 2008, the suppression motions were heard again, and then continued again until January 23, 2009.[52]

On February 23, 2009, Magistrate Judge Kaull entered his R&R on the suppression motions. The government filed a response, indicating it had no objection.[53] Petitioner filed objections;[54] her husband moved to join in them.[55] At a motions hearing on March 19, 2009, argument was heard on the suppression motions again and they were orally denied.[56] On March 20, 2009, District Judge Irene M. Keeley entered an Order, *inter alia,* adopting the R&R denying

---

[45] Dkt.# 15.

[46] Dkt.# 16.

[47] Dkt.# 17.

[48] Dkt.# 18.

[49] Dkt.#s 22 and 23.

[50] Dkt.# 4 and 193.

[51] Dkt.# 25 and 26.

[52] Dkt.# 32 and 192; Dkt.# 40 and 194.

[53] Dkt.# 46.

[54] Dkt.# 49.

[55] Dkt.# 51.

[56] Dkt.# 64.

the motions to suppress and setting the matter for trial on June 1, 2009.[57]  On May 18, 2009, petitioner moved to continue the trial and her husband moved to join the motion.[58]  By Order entered May 20, 2009, the motions were granted and the trial continued till September 30, 2009.[59]

After a three-day trial, on October 2, 2009, the Henrys were both found guilty of Counts One and Two.[60]

On October 27, 2010, the Henrys were again each sentenced to a term of 60 months imprisonment on each count, to run concurrently, and 4 years of supervised release on each count, to run concurrently. The forfeiture was stayed pending appeal.[61]

**D. Second Appeal**

On November 22 and 23, 2010, the Henrys, through their respective counsel,[62] filed notices of appeal. On appeal, their cases were consolidated, and they raised three grounds: 1) whether the thermal-imaging search warrant that led to the seizure of marijuana on their property was valid; 2) whether the district court erred in excluding testimony that Edgar Henry used marijuana for medical purposes; and 3) whether the district court erred in determining that the Henrys were ineligible to receive "safety valve" sentencing consideration under 18 U.S.C.

---

[57] Dkt.# 66.

[58] Dkt.# 73 and 74.

[59] Dkt.# 76.

[60] Dkt.# 120, and 1:08cr83-1, Dkt.# 121.

[61] Dkt.# 173.

[62] In the second iteration of the criminal case, petitioner was represented by Brian Kornbrath and her husband, by Charlie Barry.

§3553(f). On March 8, 2012, the Fourth Circuit affirmed the Henrys convictions.[63] On May 30, 2012, the Henrys petitioned for a writ of *certiorari,* which was denied on October 1, 2012.[64]

## E. <u>Federal Habeas Corpus</u>

### <u>Petitioner's Contentions</u>

The petitioner contends that:

1) trial counsel was ineffective for:

    a) refusing to appeal the denial of her motion for Magistrate Judge Kaull to recuse himself from consideration of the motion to suppress the search warrant which he had issued; and

    b) for failure to object to or appeal the district court's decision to dismiss the first indictment without prejudice, following the 4th Circuit's opinion vacating her plea and remanding the case to the district court.

2) Petitioner's 6th Amendment rights were violated when:

    a) the Magistrate Judge considered portions of the search warrant that included mention of petitioner's attendance at public hearings or trials in unrelated federal marijuana cases; and

    b) the District Judge upheld the Magistrate Judge's ruling.

3) The "good faith" exception should not have been applied at the suppression hearing to find that the investigating officer had not engaged in reckless disregard of the truth in his application for the search warrant.

4) The Magistrate Judge improperly permitted the government's lead investigator to revise his previously sworn testimony after the suppression hearing.

As relief, petitioner seeks to have the indictment dismissed; her convictions overturned, and her sentence, including the forfeiture, vacated.

### <u>Government's Response</u>[65]

---

[63] (4th Cir. Dkt.# 61)(10-5201 and 10-5219).

[64] (4th Cir. Dkt.# 70)(10-5201 and 10-5219).

The Government contends that petitioner's claims of ineffective assistance are unfounded and should be denied. Further, petitioner's Ground Two - Four claims are procedurally defaulted and are not supported by fact or law.

**Petitioner's Reply**

Petitioner reiterates her arguments and attempts to refute the government's on the same.

## III. <u>Analysis</u>

### A. <u>Burden of Proof</u>

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant to §2255 requires the petitioner to establish his grounds by a preponderance of the evidence." <u>Sutton v. U.S.A.</u>, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006).

### B. <u>Procedural Default</u>

Before evaluating the merits of petitioner's claims, the Court must determine which of petitioner's issues she may bring in this § 2255 motion and which she has procedurally defaulted upon by failing to raise them on direct appeal. It is well settled that non-constitutional issues that could have been raised on direct appeal but were not may not be raised in a collateral attack such as a §2255 motion. <u>Sunal v. Large</u>, 332 U.S. 174, 178-79 (1947); <u>Bousley v. United States</u>, 523 U.S. 614 (1998). This is because "a final judgment commands respect" such that "a collateral challenge may not do service for an appeal." <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982).

---

[65] Inexplicably, the Government's very terse response makes no mention of the earlier criminal case against the Henrys.

Examples of such "procedurally defaulted" issues include, generally, errors of law committed by the trial court and, specifically, "the existence of evidence to support any conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trial, and other errors in trial procedure which do not cross jurisdictional lines." Sunal, 332 U.S. at 179.

In contrast to non-constitutional issues, constitutional issues that were capable of being raised on direct appeal but were not may nevertheless be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged errors. United States v. Maybeck, 23 F.3d 888, 891 (1994). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999), *cert. denied,* 529 U.S. 1010 (2000) *overruled on other grounds by* Dretke v. Haley, 541 U.S. 386, 393 (2004).[66] Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986).

"In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas,186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494. The petitioner must

---

[66] Dretke recognized a narrow exception to the procedural default "cause" requirement, where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense, and extended the exception to claims of capital sentencing error.

show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298 (1995). Finally, issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976).

In this case, petitioner's Grounds Two, Three, and Four all relate to the basis for the district court's rulings that upheld the sufficiency and validity of the search warrant and denied the Henrys' multiple motions to suppress it.

As a preliminary matter, petitioner has not proven, let alone even alleged, actual innocence. Further, her Ground Three claim regarding the inapplicability of the "good faith" exception to the investigating officer's application for the search warrant has already been litigated in her motions to dismiss in this court, and petitioner admits in her §2255 motion that she raised it on direct appeal. In its published opinion, the Fourth Circuit Court of Appeals reviewed petitioner's claim on the merits, and denied her relief.[67] Petitioner also filed a petition for a writ of *certiorari* in the United States Supreme Court regarding the same issue, but *certiorari* was denied. Henry v. United States, 133 S. Ct. 182 (2012). An issue previously "raised and decided" on direct appeal cannot be relitigated under a §2255 Motion to Vacate if the appellate court resolved the issues on the merits. United States v. Linder, 561 F.3d 339, 343 (4th Cir. 2009)(citing United States v. Davis, 406 F.3d 505 (8th Cir. 2005))**.** Because Ground Three was previously "raised and decided" on direct appeal, it is barred from reconsideration. Davis v. United States, 417 U.S. 333 (1974); Boeckenhaupt v. United States, 537 F. 2d 1182 (4th Cir. 1976).

Petitioner's Ground Two claim that her 6th Amendment rights were violated when the Magistrate Judge and District Judge improperly considered portions of the search warrant that included mention of her attendance at public hearings and/or trials in unrelated federal marijuana

---

[67] Dkt.# 210.

cases, in addition to be unsupported by fact or law, is procedurally barred as well. While petitioner did not *specifically* premise her argument on the invalidity of the search warrant on this particular issue on appeal, she did challenge the overall sufficiency of the application and affidavit submitted to obtain the thermal-imaging search warrant, of which this issue was one part. Accordingly, the Fourth Circuit's analysis included examination of all of the information included in the application and affidavit, of which petitioner's "acute interest" in 2002 court proceedings involving another person from Rosedale charged with growing marijuana was one part.[68] After conducting its analysis, the Fourth Circuit concluded that the affidavit "provided a sufficient basis to establish probable cause" for the thermal-imaging search warrant's issuance, and that the district court did not err in denying the Henrys' motion to suppress.[69] Moreover, despite petitioner's attempt to bootstrap this non-constitutional claim into a violation of her 6th Amendment rights, it does not implicate the 6th Amendment at all. The 6th Amendment only guarantees an accused the right to his or her *own* public trial; here, petitioner was never denied the right to her own public jury trial. Finally, as the government correctly noted, there can be no constitutional right to secrecy in attending a public event, including another person's public trial. Accordingly, this claim is barred.

Petitioner's Ground Four claim is that after she and her husband presented evidence at the suppression hearing to show that the government's lead investigator's testimony regarding his view of their property, incident to his walk-up, was physically impossible from the vantage point he claimed to have looked out from, the Magistrate Judge improperly permitted the officer to revise his previously-sworn testimony. This claim is likewise barred. To the extent that petitioner is attempting to relitigate her Fourth Amendment claim, she cannot do so now. When a

---

[68] (4th Cir. Dkt.# 61 at 4 and 10)(10-5201).

[69] (4th Cir. Dkt.# 61 at 10)(10-5201).

prisoner has had a "full and fair" opportunity to litigate a Fourth Amendment claim, habeas corpus relief may not be granted on that claim. Stone v. Powell, 428 U.S. 465, 494 (1976). Once the district court has inquired into whether the petitioner had an opportunity to raise a Fourth Amendment claim, "it need not inquire further into the merits of the case . . .unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978).

Here, the issue of the investigating officer Trooper Manning's view of the Henrys' property and whether he intentionally lied about the facts stated in his application to obtain the search warrant was specifically raised in the Henrys' Franks motion in both iterations of their criminal case;[70] motions hearings were held on the issue in both cases;[71] testimony was had by proffer in the first iteration of the case[72] and by live testimony, during which Manning was vigorously cross-examined by the Henrys at the sentencing hearing in the first case[73] and in motions hearings in the instant case[74] as well as again at trial; the Henrys presented expert witness engineering testimony on the issue when it was argued in a motions hearing in the instant case;[75] Magistrate Judge Kaull issued R&Rs on it twice,[76] the Henrys entered objections twice;[77]

---

[70] See 1:04cr82, Dkt.# 24 and 25 and 1:08cr83, Dkt.# 17 at 2 – 3.

[71] See 1:04cr82, Dkt.# 172 and 1:08cr83, Dkt.# 24; 32; 40; 193 at 17 – 28; 192, and 194.

[72] See 1:04cr82, Dkt.#  172.

[73] See 1:04cr82, Dkt.# 174.

[74] See 1:08cr83, Dkt.# 40 and Dkt.# 194 at 10 – 48.

[75] See 1:08cr83, Dkt.# 32 and Dkt.# 192 at 7 -  63.

[76] See 1:04cr82, Dkt.# 37 and 1:08cr83, Dkt.# 45 at 16 – 29.

[77] See 1:04cr82, Dkt.# 44 and 1:08cr83, Dkt.# 49.

and Magistrate Judge Kaull's R&Rs were affirmed and adopted in Orders issued by District Judge Irene Keeley twice.[78] Again, on appeal, while the Henrys did not specifically premise their argument challenging the validity of the affidavit and application for the search warrant on this particular issue, they did challenge the overall sufficiency of the affidavit and application submitted to obtain the thermal-imaging search warrant, of which this issue was one part. As noted *supra,* the Fourth Circuit examined the record and found no error. Based upon a review of the record, the undersigned finds that petitioner was given a "full and fair opportunity" to litigate her Fourth Amendment claim.

## C. Ineffective Assistance of Counsel

Petitioner contends that Attorney Kornbrath was ineffective for failing to appeal the denial of her motion to recuse Magistrate Judge Kaull from consideration of her motion to suppress the search warrant. Further, she contends Kornbrath was ineffective because he did not object to or appeal the district court's decision to dismiss the first indictment without prejudice upon remand to the district court.

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth

---

[78] See 1:04cr82, Dkt.#40 and 1:08cr83, Dkt.# 66.

Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel when analyzing ineffective assistance of counsel claims. First, there are "personal" decisions that require the defendant's consent, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998) (citations omitted). The second category includes decisions that "'primarily involve trial strategy and tactics," such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." Id. (quoting United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain

issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington v. Richter, 131 S. Ct. 770, 790 (2011) (citations omitted) (internal quotation marks omitted).

**Ground One (a):** **Whether counsel was deficient for not appealing the denial of plaintiff's motion to recuse the Magistrate Judge from presiding over the hearing on her motion to suppress the evidence seized as a result of the search warrant he issued.**

Petitioner's §2255 motion merely sets forth her claim without providing argument in support. Further, it is unclear whether petitioner is asserting that Attorney Kornbrath, who represented her at trial and on appeal, was ineffective at the trial level, for not filing an interlocutory appeal of the denial of the recusal motion, or at the appellate level, for failing to raise the denial of the recusal motion issue as a grounds for appeal, or both. Accordingly, given that *pro se* filings are to be liberally construed, no matter how unskillfully pleaded,[79] both possible permutations of the claim will be taken in turn.

Petitioner and her husband filed their motion to recuse the Magistrate Judge in the instant case six weeks after they were re-indicted, on November 16, 2008.[80] The government was directed to respond, and then the issue was argued at a December 3, 2008 motions hearing.[81] On December 3, 2008, Magistrate Judge Kaull entered an Order denying petitioner's motion to recuse. Specifically, Judge Kaull ruled that

> Defendants' sole basis for seeking recusal is that the undersigned reviewed the affidavit and application for the search warrant in question and approved and issued the same; thereafter was called upon to review and did review the same during the 2005 suppression hearing and therein upheld the validity of the search warrant and refused to suppress the evidence; and therefore, an appearance of impropriety in violation of §455(a) is created by the undersigned again being called upon to review the application, affidavit and search warrant pursuant to the instant suppression motion.

---

[79] See Haines v. Kerner, 404 U.S. 519, 520 (1972).

[80] Dkt.# 15.

[81] Dkt.# 24.

The Court finds Defendants' reasoning flawed; at odds with existing circuit court law from other circuits; without any on point support from any case decision by the Fourth Circuit Court of Appeals; and without any factual support.

Dkt.# 25 at 5-6.

It is clear from the record that counsel investigated petitioner's claim regarding the motion to recuse; researched and drafted the motion; and vigorously argued it at the hearing before Judge Kaull. Given this, the undersigned finds that petitioner has failed to meet her burden of showing that counsel's conduct did not fall "within the wide range of reasonable professional assistance." Carter, *supra* at 249. Merely because the court denied the motion does not prove counsel's ineffectiveness. Under the circumstances, it can be presumed that counsel did not choose to file an interlocutory appeal on the issue before trial, because it is clear from the record that it would not have succeeded. "Counsel is not required to waste the court's time pursuing frivolous legal motions." Wheeler v. United States, 2011 WL 2491376, at *15 (N.D. W.Va. Apr. 25, 2011) (citing United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978)).

Likewise, the same claim, now leveled at Attorney Kornbrath in his role as appellate counsel must fail as well.

The standard of effective assistance of appellate counsel is the same as for trial counsel. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal citations and quotations omitted). On review, however, appellate counsel is accorded

the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." Bell v. Jarvis, 236 F.3d at 164. Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the landmark of effective advocacy." Bell v. Jarvis, 236 F.3d at 164 (quoting Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted). However, although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

Accordingly, any claim by petitioner that appellate counsel was ineffective for not raising the issue of the motion to recuse as grounds for appeal must fail as well. As appellate counsel, it is apparent that Kornbrath, recognizing that his motion to recuse was "at odds with existing circuit court law from other circuits; without any on point support from any case decision by the Fourth Circuit Court of Appeals; and without any factual support," winnowed out the weaker arguments for appeal in favor of more promising, nonfrivolous issues. This is not a situation where an ignored issue is clearly stronger than those presented for appellate review, sufficient to overcome the presumption of effective assistance of appellate counsel. Because petitioner has

not proven the prejudice prong of <u>Strickland</u>, and cannot show prejudice, this claim should be denied.

**<u>Ground One (b)</u>: Whether counsel was ineffective for failing to object to or appeal the Court's decision to dismiss the first indictment without prejudice.**

Petitioner's §2255 motion contends, again with no argument in support, that counsel was ineffective because upon remand, he did not object to or appeal the District Court's decision to dismiss the first indictment without prejudice. In her reply, petitioner still offers no argument, but contends that she and her husband specifically requested that counsel appeal this issue, but that counsel refused to do so.[82]

As an initial matter, the remedy for a violation of the Speedy Trial Act is dismissal of the indictment. <u>See</u> 18 U.S.C. §3162(a). Where the dismissal is without prejudice, the government is free to re-indict. <u>See</u> <u>United States v. Gambino</u>, 59 F.3d 353, 363 (2nd Cir. 1995).

Here, a review of the record reveals that upon remand, the Court entered its September 9, 2008 Order dismissing the indictment without prejudice, stating that it had considered the factors under 18 U.S.C. § 3162(a)(1):

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. **In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice**.

18 U.S.C. § 3162(a)(1)(emphasis added).

Petitioner's claim has no merit. The Court was free to dismiss the indictment without prejudice and re-indict. The Henrys' offense was a serious one, involving relevant conduct

---

[82] Dkt.# 241 at 1.

found in the first iteration of the case to be 1,248 marijuana plants, or 124.8 KG of marijuana.[83] The Speedy Trial Act violation required dismissal. The administration of justice required reprosecution, and much of the evidence had already been discovered in the first iteration of the case. Accordingly, counsel had no grounds to object, and cannot be faulted for not wasting the court's time pursuing frivolous legal motions." <u>Wheeler</u>, *supra* at *15. This claim must also fail because it is nothing more than a bare-boned assertion, with no argument in support. Because petitioner has not provided the Court with any evidence to support her claims, she has failed to meet her burden under § 2255. <u>See</u> <u>Sutton</u>, *supra* at *2; <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992)("a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."). Finally, the undersigned notes that even if this claim were had merit and were not insufficiently pled, the mere fact that counsel failed to recognize the factual or legal basis for a claim or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. <u>Murray v. Carrier</u>, 477 U.S. 478, 486 (1986). Because petitioner can prove neither the performance or the prejudice prong of <u>Strickland,</u> this claim should be denied.

Because this claim had no merit, assuming that petitioner intended it against Attorney Kornbrath in his role as appellate counsel, it would likewise fail. Only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome. <u>Gray v. Greer</u>, *supra* at 646.

### IV. <u>Recommendation</u>

For the foregoing reasons, the undersigned recommends that petitioner's §2255 motion be **DENIED** and that this matter be **DISMISSED with prejudice.**

---

[83] <u>See</u> 1:04cr82, Dkt.# 159 at 1.

Within **fourteen (14) days** after being served with a copy of this recommendation, **or by September 1, 2014,** any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to her last known address as shown on the docket and to transmit a copy electronically to all counsel of record.

DATED: August 18, 2014

/s/  James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE